EARN LINE STEAMSHIP CO. v. ENNIS.

(District Court, E. D. Pennsylvania. December 11, 1907.)

No. 62.

SHIPPING—CHARTERS—CONSTRUCTION—LAY DAYS.

A charter party provided that lay days should commence at 12 o'clock noon after the steamer was entered at the customhouse, Sundays and holidays excepted, the steamer being in every respect ready to load and discharge and in free pratique, of which the captain was to give notice in writing to shippers and consignees, and that dispatch money at the rate of £15 per day should be paid for time saved in loading and dis-

charging. *Held*, that where the steamer was not ready to receive cargo until after 12 o'clock noon on June 11, 1903, and was not ready to discharge until after 12 o'clock noon on June 20th thereafter, the lay days for loading did not begin until June 12th at 12 o'clock noon, and the days for discharge until June 22d at 12 o'clock noon, June 21st being Sunday, and this though the shippers actually began loading on the 11th at 1:30 o'clock p. m., and began the discharge at 2:50 o'clock p. m., on the 20th, and continued the same continuously thereafter until the loading and discharging was completed.

Convers & Kirlin and Henry R. Edmunds, for libelant.
Alex. Simpson, Jr., for respondent.

HOLLAND, District Judge. On or about June 1, 1903, a charter party was entered into in writing between the libelant and respondent, by the terms of which the steamship Dania was to proceed to Santiago, Cuba, and there load a full cargo of ore for the respondent, who was to pay the freight thereon at the rate of 8s. 6d. per ton of 2,240 pounds on delivery thereof at New York. The charter party provided that:

"The cargo to be loaded at the rate of 250 tons and discharged at the rate of 250 tons per running day of twenty-four hours (Sundays and holidays excepted), and charterers to have the liberty to load and discharge on Sundays and holidays, such time not to count as lay days. Charterers have the option of averaging days for loading and discharging, in order to avoid demurrage, and ship is to load and discharge as rapidly as possible, by night as well as by day if required, providing steam power and winchmen, when required so to do by the charterers, their agents or consignees. Dispatch money, at the rate of fifteen pounds per day of twenty-four hours, to be paid by the steamer for any time saved in loading and discharging. Lay days to commence at twelve o'clock noon, after steamer is entered at customhouse, (Sundays and holidays excepted) and is in every respect ready to load and discharge respectively and in free pratique, of which the captain is to give notice in writing to shippers and consignees."

Dispatch money, in accordance with the provisions of the charter party, was earned both at the port of lading and the port of discharge, for which the respondent made certain deductions from the amount of freight paid. The libelant, however, claims that there was an overcharge of $72.04 for dispatch money at Santiago, the port of loading, and $102.35 at New York, the port of discharge, making a total of $174.39, for which this libel is filed.

The libelant claims that the Dania arrived at Santiago on June 11, 1903, was ready to load and in free pratique at 11:30 a. m., and that the lay days commenced at 12 o'clock noon of that day, whereas the respondent insists that the vessel did not arrive at the loading berth on June 11, 1903, until 12:10 o'clock p. m., and that the lay days did not commence until June 12th at 12 o'clock, and that the time saved was 19 days and 9 hours, instead of 18 days and 9¼ hours allowed by the libelant. And, again, there is a dispute as to the time the lay days commence to run at New York, the port of discharge. Libelant claims that the Dania arrived and entered at the customhouse and was ready to discharge and in free pratique at about 11:30 a. m. in the forenoon of Saturday, June 20, 1903, and that the discharge was completed at 8 a. m. June 25th, thus occupying 4 days and 20 hours

from the beginning of her lay days, to wit, June 20, 1903, or, excluding Sunday, a period of 3 days and 20 hours, so that 16 days and 4 hours were saved, for which dispatch money, at the rate of £15 per day, became due, amounting to £242 13s 2d. The respondent, however, claims that the vessel was not in free pratique and ready to discharge until after 12 o'clock on Saturday, June 20, 1903, and, as the following day was Sunday, lay days did not begin to run until June 21, 1903. The cargo was discharged in 2 days and 20 hours, which deducted from 20 days, the time allowed in the charter party, leaves 17 days and 4 hours, for which the respondent would be entitled to dispatch money at the rate of £15 per day. The respondent, however, has retained dispatch money at that rate for 17 days and 14 hours, claiming that there were stoppages aggregating 10 hours for which the vessel was responsible.

There was no evidence submitted in this case on the part of the respondent, but that taken by the libelant establishes to my satisfaction (1) that the steamship Dania was not ready to load at Santiago until after 12 o'clock of noon of June 11, 1903, and, as a result, under the charter party, lay days did not commence to run until 12 o'clock noon of June 12th, the following day, and the retention by the respondent of the sum of $72.04 as dispatch money for the time saved in loading was properly deducted; (2) that the vessel was not in free pratique and ready to discharge her cargo at the port of New York until after 12 o'clock noon of the 20th day of June, and, as the next day was Sunday, and under the terms of the charter party excepted as a holiday, the lay days did not commence until 12 o'clock noon on Monday, June 22, 1903, and that the retention of dispatch money at the rate of £15 per day was properly deducted for 17 days and 4 hours; (3) that there is no evidence to show that the officers of the vessel were responsible for any stoppages that may have extended the time of the charterers 10 hours in discharging the vessel at the port of New York; (4) that the dispatch money retained at the rate of £15 per day for these 10 hours was improperly deducted, and the libelant is entitled to recover the same, with interest, from September 6, 1903.

In this case the charterers commenced loading at Santiago on June 11, 1903, at 1:30 o'clock p. m., and when the vessel arrived in the port of New York on Saturday, June 20, 1903, they started to discharge her at 2:50 o'clock p. m. of the same day. It is insisted by the libelant that notwithstanding the express provision in the charter party that "lay days were to commence at 12 o'clock noon after the steamer was entered at the customhouse (Sundays and holidays excepted) and was in every respect ready to load and discharge respectively and in free pratique, of which the captain was to give notice in writing to the shippers and consignees," yet, as the charterers actually did begin loading at Santiago on the afternoon of June 11th and to discharge the cargo at the port of New York on Saturday afternoon of June 20th, that the lay days commenced upon the dates when the work began. There is no evidence to show that there was any agreement or understanding that the provisions of the charter party in regard to the time when the lay days were to begin were not to be observed

There is no room for a misunderstanding as to the intention of the parties to this agreement as to when the lay days should begin. It is in writing, signed by the parties, fixing the time with such particularity that there is no necessity to resort to any other means for that purpose. The authorities cited by the libelant to establish the claim that all days are to be counted as lay days upon which the parties proceed with the work of loading or discharging are not cases where the charter party so clearly fixes the time when lay days shall commence and what days shall be counted as does the agreement in the case at bar.

The libelant is entitled to judgment for the amount of dispatch money wrongfully retained for the 10 hours above referred to, together with interest from September 6, 1903, and the respondent is directed to pay the costs of this suit.