### ELDER DEMPSTER S. S. CO., Limited, v. EARN LINE S. S. CO.

(District Court, S. D. New York. May 16, 1908.)

SHIPPING—LAY DAYS—DISPATCH MONEY.

    Where by the terms of a charter party the lay days for discharging were to commence 24 hours after the vessel's entry at the custom house, but both parties were ready and the discharge commenced immediately after her entry, for the purpose of computing dispatch money earned under the charter the lay days commenced at the time the discharge actually begun.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, §§ 590–592.]

In Admiralty.

Ralph J. M. Bullowa, for libellant.
Horace L. Cheney, for respondent.

ADAMS, District Judge. This action was brought by the Elder Dempster Steamship Company, Ltd., against the Earn Line Steamship Company to recover the sum of $101.70, alleged to be due by reason of an excess deduction of that sum by the respondent as despatch money. The respondent excepted to the libel on the ground that it did not state a cause of action.

The libel alleged:

"Third: On or about the 26th day of November, 1907, in the City of New York, a charter party in writing was concluded between Daniel Bacon, agent for the libellant and the Earn Line Steamship Company. Said charter party provided for the freighting and chartering of the Steamship Memnon or substitute for the carriage of a cargo of coal from the port of Philadelphia, or Baltimore, or Newport News to Havana, Cuba.

Said charter party contained among other clauses the following:

'5. It is agreed that the lay days for loading and discharging shall be as follows, steamer to take her turn in loading, as customary, and cargo to be loaded with customary despatch.

Consignees to receive cargo at port of discharge at the rate of not less than 400 tons of coal per running day, Sundays and Legal Holidays excepted. Lay days at port of discharge to commence twenty four hours after Steamer's entry at Custom House, and steamer to work at night, if required.

6. Steamer to pay charterers or their agents despatch money at the rate of five cents United States gold per net register ton per day for each lay day not used at discharging port.

7. Also, that for each and every day's detention by default of said party of the second part, or Agent, ten cents U. S. gold per net register ton per day, day by day, shall be paid by said party of the second part, or Agent, to the said party of the first part, or Agent.'

A copy of said charter party is hereby referred to, marked 'Exhibit A' and is made part hereof.

Fourth: Thereafter the Steamship Adoni was substituted in place of the Memnon and loaded 4633 tons of coal in accordance with the provisions of the aforesaid charter party and proceeded to the port of Havana and arrived at said port on the 27th day of December at 8:30 A. M. and was entered at the Custom House and commenced to discharge her cargo on December 27th, 1907 at 10 A. M. and completed the discharge of the cargo on the 31st day of December at 3 P. M.

Fifth: The discharge of the Adoni occupied in all 3 working days and 5 hours.

Sixth: The respondent, under the provisions of the Charter party aforesaid was entitled to 11 working days and 14 hours for the discharge of the cargo of coal and was entitled to $101.70 despatch money for each day not occupied in the discharge of cargo.

Seventh: The respondent, in making payment of freight deducted $953.44 for 9 days and 9 hours despatch money instead of $851.74 for 8 days and 9 hours despatch money which respondent was entitled to deduct, making an over deduction of $101.70 which has been demanded of the respondent and payment of the same has been refused."

It appears that 3 days and 5 hours were occupied in discharging. The charterer was entitled to 11 days and 14 hours for that purpose and the respondent in paying freight deducted 9 days and 9 hours. The libellant claims that it was entitled to deduct for 8 days and 5 hours only.

The contract provided that lay days should commence 24 hours after the steamer's entry at the Custom House, if required. The respondent contends that the lay days commenced, therefore, on December 28th at 10 a. m. The libellant contends that while the charterer was not obliged to commence unloading on December 27, yet as it actually did commence on that day, it must be considered as a lay day.

The libellant's view seems to be correct and sustained by the authorities—The Cyprus (C. C.) 20 Fed. 144; The Katy, L. R. Prob. Div. 1895, 56; Leary v. Talbot (C. C. Appeals, 2d Circuit, April 14, 1908) 160 Fed. 914. In the latter case, it was said:

"The vessel reported on October 17 at 11 A. M. and under the rule, the charterers were entitled to one full calendar day in which to furnish a berth, which would have given them until the morning of October 19, a calendar day extending from midnight to midnight. Laws N. Y. 1892, p. 1491, c. 677, § 27. In point of fact the discharge began on the morning of October 18, so that lay days should be calculated from that time. * * * "

A contrary view seems to have been taken in Earn Line Steamship Co. v. Ennis (D. C.) 157 Fed. 941, but no authorities are cited there, and it seems to me that those cited above should be followed. One lay day was, therefore, not used and it results that the despatch money sought to be recovered belongs properly to the libellant and should be allowed.

The exception is overruled.